UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS J. NOWICKI,       )<br>    *Plaintiff*,          )<br>                             )<br>    v.                       )<br>                             )<br>PACE SUBURBAN BUS SERVICE, a division of the  )<br>REGIONAL TRANSPORTATION AUTHORITY,  )<br>an Illinois Municipal Corporation,       )<br>    *Defendant*.         )| Case No.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, Dennis J. Nowicki, by and through his attorneys, and complains of Defendant, PACE Suburban Bus Service, a division of the Regional Transportation Authority, an Illinois municipal corporation, as follows.

### NATURE OF ACTION

1. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended, and to redress Defendant's failure to accommodate his disability and wrongfully terminating his 36-year employment as a bus operator, through which he seeks to be reinstated and to be made whole.

### JURISDICTION & VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. §1331 in that this action involves claims authorized under 42 U.S.C. § 12101, et seq.

3. Plaintiff complied with all administrative prerequisites before filing the instant action. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 23, 2104, a copy of which is

attached hereto as Exhibit A. The EEOC issued to Plaintiff a Notice of Right to Sue on December 16, 2014, which notice is attached hereto as Exhibit B.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because the events giving rise to this action occurred within this judicial district.

## PARTIES

5. Plaintiff, Dennis J. Nowicki, an individual, (hereinafter sometimes referred to as "Mr. Nowicki"), is a citizen and resident of DuPage County, Illinois, and was formerly employed by Defendant working out of its Northwest Division location.

6. Defendant PACE Suburban Bus Service, is a division of the Regional Transportation Authority, an Illinois municipal corporation organized under the laws of the State of Illinois (hereinafter sometimes referred to as "PACE").

7. At all times relevant hereto, the Defendant employed more than twenty (20) employees, was engaged in an industry affecting commerce, and was a covered employer under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

8. At all times relevant hereto, and particularly during the period July 2013 through March 2014, Plaintiff was an employee of Defendant as defined by the ADA and a qualified individual with a disability within the definition of that act, 42 U.S.C. §12111(8).

## FACTUAL ALLEGATIONS

9. Mr. Nowicki had been employed by PACE as a bus operator for approximately 36 years, being first employed on or about March 14, 1977.

10. At all times relevant hereto, Mr. Nowicki performed his duties as a bus operator at or above his employer's legitimate expectations and received many accolades for his diligent service and years of accident-free bus operation.

11. On or about July 10, 2013, Mr. Nowicki was diagnosed with BPH, benign prostatic hyperplasia.

12. Plaintiff's medical condition substantially impairs a major bodily function, including the functioning of his bladder, and therefore a major life activity, as defined by the ADA, 42, U.S.C. §12102(1) and §12102(2)(B).

13. On or about July 10, 2013, Mr. Nowicki informed his supervisors Rick Foster, Superintendent of Transportation, and Mike Strauss, Safety and Training Manager, of his medical diagnosis and that it was going to impact his work.

14. Mr. Foster and Mr. Strauss directed Mr. Nowicki to see the company doctor.

15. Mr. Nowicki was examined by his own Dr. Aristidis Hatzidimitraidis, on or about July 10, 2013, who then provided a doctor's note taking Mr. Nowicki off work through August 8, 2013, so the condition could be further evaluated.

16. Mr. Nowicki presented Dr. Hatzidimitraidis' note to Mike Strauss.

17. Mike Strauss then sent Mr. Nowicki home, judging him to be unable to work.

18. On or around July 30, 2013, PACE put Mr. Nowicki on short term disability and FMLA leave.

19. Then, on or about September 5, 2013, Dr. Hatzidimitraidis placed Mr. Nowicki on an indefinite medical leave until such time as the symptomology of his medical condition could be resolved by a urology specialist.

20. Also, on or around September 19, 2013, Mr. Nowicki's short term disability and FMLA leave expired. PACE then placed Mr. Nowicki on a 6-month unpaid leave of absence, pursuant to the requirements of a union collective bargaining agreement.

21. Mr. Nowicki made several attempts to have his condition treated medically, both

with and without surgical intervention; all attempts were unsuccessful.

22. During the course of his leave of absence, Mr. Nowicki regularly met with his supervisors and kept them informed of the progress of his medical treatment and gave them copies of the doctor's notes.

23. On or around November 27, 2013, Mr. Nowicki was evaluated by Dr. Lubna Al-sinawi, who concluded that Mr. Nowicki's medical condition could not be resolved and thus deemed Mr. Nowicki medically unacceptable for work as a bus operator.

24. In or around December 2013, having had no job income since July of 2013, Mr. Nowicki asked his supervisor for an accommodation for his medical condition, asking to be placed in a different job position, one that would allow him to work with his medical condition.

25. Plaintiff's supervisor, unequivocally denied Mr. Nowicki's request to be placed in a different job position.

26. Plaintiff's supervisor did not offer any explanation for his refusal to consider Plaintiff's request that he be re-assigned.

27. Plaintiff's supervisor also did not offer any suggestion for any other possible accommodation for Mr. Nowicki and did not engage in any discussion of Mr. Nowicki's abilities or limitations to determine whether alternative positions fitting Mr. Nowicki's qualifications were available or whether accommodations to his current position could be made.

28. In or around January 2014, surgery having proved unsuccessful in resolving his medical condition, Mr. Nowicki again asked his supervisor to place him into a different position that would allow him to continue working.

29. Plaintiff's supervisor again denied Mr. Nowicki's request to be placed in a different position.

30. Mr. Foster said, "No way, there is no job for you."

31. Mr. Nowicki responded, saying, "PACE is a huge organization and there is nothing for me?"

32. Mr. Foster, once again, refused to discuss the request or offer any explanation for his refusal to consider Plaintiff's request to be accommodated.

33. Plaintiff's supervisor, again on this occasion, did not offer any suggestion for any other possible accommodation for Mr. Nowicki and did not engage in any discussion of Mr. Nowicki's abilities or limitations to determine whether alternative positions fitting Mr. Nowicki's qualifications were available or whether accommodations to his current position could be made.

34. In the period of December 2013 through March 2014, there were open and available positions within the PACE Suburban Bus Service division, and throughout the Regional Transit Authority, that Plaintiff was qualified to perform and for which he could have performed the essential duties with or without reasonable accommodation.

35. Placing Mr. Nowicki into an open and available position that he was qualified to hold and which he could perform with or without a reasonable accommodation would not have been an undue hardship for Defendant's business operations.

36. On March 19, 2014, PACE terminated Mr. Nowicki's 36-year employment.

37. Approximately one week after receiving notice of the termination of his employment, Plaintiff's supervisor, Superintendent Rick Foster, asked Mr. Nowicki to sign a "Resignation Form", which pre-printed language that he "hereby voluntarily submit[s] [his] resignation" and promised that if he did so Mr. Foster would (and, in fact, later did) give Mr. Nowicki a television in exchange for doing so.

5

38. On or about April 15, 2014, Defendant cancelled Mr. Nowicki's health insurance.

39. According to Plaintiff's supervisor, Mike Strauss, PACE has a policy never to discuss leaves of absence or light duty work unless such subjects are first brought up by an employee.

40. Notwithstanding that Plaintiff made specific requests for accommodation on at least two separate occasions, Defendant chose to refuse those requests outright, refused to engage in any interactive process with Plaintiff to explore possibilities for reasonable accommodations and chose instead to summarily terminate his employment after 36 years of service.

41. As a result of Defendant's conduct, Plaintiff has lost wages and other benefits, incurred out-of-pocket medical expenses, financial hardship, and has suffered irreparable damage to his career and reputation, emotional distress, a loss of enjoyment of life, inconvenience and other non-pecuniary losses.

42. Title I of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., as amended, makes it unlawful for an employer to fail to accommodate an employee's disability.

43. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his disability and failed to accommodate Plaintiff's disabling physical condition.

44. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's rights to be free from impermissible disability discrimination.

45. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

46. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against Defendant as follows:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended;

b) Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c) Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

f) Enjoin Defendant and all officers, agents, employee, and all persons in active concert or participation with it from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

                                              Respectfully submitted,
                                              DENNIS J. NOWICKI


                                              s/ John P. Madden
                                              Attorney for the Plaintiff


John P. Madden
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois  60605
(312) 697-1382
jmadden@ompc-law.com